U.S. DISTRICT COURT
DISTRICT-WI
FILED
Rec'd
2017 APR 17 P 4: 24
JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>CHARLES N. EDWARDS,<br><br>Defendant. | Case No. 16-CR-159 |

**RESPONSE BY THE UNITED STATES TO MAGISTRATE JUDGE WILLIAM E. DUFFIN'S RECOMMENDATIONS**

The United States of America, by United States Attorney Gregory J. Haanstad and Assistant United States Attorney Christopher Ladwig, respectfully request that this Court deny defendant Charles Edwards' motion to suppress the search warrant evidence.

### I. ANALYSIS

**A. THE FOURTH AMENDMENT AND THE WARRANT REQUIREMENT**

The requirements for search warrants are clear, and the state search warrant complied with the "Warrant Clause" of the Fourth Amendment. The Supreme Court, in *Dalia v. United States*, 441 U.S. 238, 255 (1979), stated that the "Warrant Clause" requires the following three directives:

> First, warrants must be issued by neutral, disinterested magistrates. *See Connally v. Georgia*, 429 U.S. 245, 250-251

1

(1977) (per curiam); *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 459-460 (1971). Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. *Warden v. Hayden*, 387 U.S. 294, 307 (1967). Finally, "warrants must particularly describe the 'things to be seized,'" as well as the place to be searched.

The Supreme Court explicitly stated in *Illinois v. Gates*, 462 U.S. 213, 231 (1983) that each factual allegation put forth in an affidavit need not be independently documented. Rather, probable cause simply requires that enough information be presented for a magistrate to make the judgment that "the charges are not capricious and are sufficiently supported to justify bringing into play further steps of the criminal process." *Id.*

Probable cause is a common-sense, nontechnical inquiry, and an affidavit submitted in support of a search warrant application will be sufficient to support a probable cause finding if, "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003).

The judge who issues the search warrant has the duty to make a practical, common-sense decision as to whether, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found at a particular location. *Gates* at 238. The duty of the reviewing court is to ensure that the judicial official had a substantial basis for concluding probable cause existed. *Id.* at 238-239.

A magistrate's determination of probable cause should be paid great deference by

2

reviewing courts. *Id.* at 236. As the court explained, "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause [and] Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." *United States v. Carroll*, 750 F.3d 700, 703-704 (7th Cir. 2014).

**B. NEXUS BETWEEN DRUG TRAFFICKING, GUNS, AND A DRUG TRAFFICKER'S RESIDENCE**

A magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept, based on the nature of the evidence and the type of offense. *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996); *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991). In the case of drug dealers, evidence is likely to be found where the dealers live. *Reddrick*, 90 F.3d at 1281; *Lamon*, 930 F.2d at 1188.

Federal courts, including the Seventh Circuit Court of Appeals, have consistently found that there is a common sense nexus between a drug trafficker's residence and evidence of drug trafficking. *United States v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010) ("reasonable inference ... that drug dealers often store evidence of drug crimes in their residences,... In demanding some evidence 'that the home contains contraband linking it to the drug dealer's activities,' we moored our 'drug dealer' inferences back to the 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"); *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) ("Judges may draw reasonable inferences from the totality of the circumstances in determining

3

whether probable cause exists to issue a search warrant.... Here, evidence of drug manufacturing and distribution was recovered from the accident scene. It was linked to [the defendant's] residence through the experienced opinion of [law enforcement] that drug manufacturers often keep contraband and proceeds at their personal residences."); *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) ("it's merely common sense that a drug supplier will keep evidence of his crimes at his home. [W]e said that when police officers have probable cause to believe that a suspect is involved in drug distribution, there is also probable cause to believe that additional evidence of drug-trafficking crimes (such as drug paraphernalia or sales records) will be found in his residence. *See* 2 Wayne R. LaFave, Search and Seizure § 3.7(d), at 421–22 n. 170 (4th ed.2004); *cf. id.* at 421–22 ('[I]t is commonly held that this gap can be filled merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home.'"). Accordingly, the search warrant was supported by probable cause."); *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C.Cir. 2008) ("common experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade ... in secure locations,": and for "the vast majority of drug dealers, the most convenient location to secure items is the home"); *United States v. Grossman*, 400 F.3d 212, 218 (4th Cir. 2005) (search warrants were upheld because "it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key"); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the drug dealers live"); *Reddrick*, 90 F.3d at

4

1281; and *Lamon*, 930 F.2d at 1188.

Furthermore, federal courts have acknowledged that it is reasonable for a magistrate to conclude that individuals who own guns will keep them in their homes or on their persons. *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir. 1975). It also is recognized that drug dealers often use guns and knives to protect their operations. *United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006). It logically follows that it is likely that if there is evidence that a drug dealer possessed a firearm, then evidence of gun ownership or possession, such as cleaning kits, holsters, paperwork, or ammunition, would also be in the gun possessor's home.

## C. THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE

Edwards argues that the state search warrant did not reach the probable cause threshold because of two reasons: (1) Officer Newport's affidavit did not sufficiently detail how it was determined that Edwards resided at 3284 N. Sherman Boulevard, apartment #2, Milwaukee, WI; and (2) Officer Newport's affidavit did not provide a sufficient nexus between Edwards' armed drug trafficking offense and the search of his residence for drug and gun evidence. Both arguments ignore the many facts that establish probable cause, and Edwards' cited cases are distinguished from the present case because of the substantial facts supporting the search of Edwards' home.

In this case, the affidavit when viewed in its totality, clearly establishes probable cause to search Edwards' residence at 3284 N. Sherman Boulevard, apartment #2. Officer

5

Newport's affidavit provides significant detail surrounding the events of Edwards' arrest in Sherman Park. Edwards was arrested for possessing a gun and cocaine that was, in the arresting officer's training and experience, in quantities and packaging consistent with drug trafficking. The affidavit explains the weight of the drugs, how the drugs were packaged, that the drugs tested positive for the presence of cocaine, and that the packaging and amount was consistent with street-level drug trafficking. The affidavit also explains that the drugs were packaged in a "clear plastic sandwich bag" and were portioned in "corner cuts." This evidence shows that Edwards possessed drugs packaged with a household item, sandwich bags, and that the cocaine was measured and packaged for sales. Common experience suggests that drug dealers must mix and measure the merchandise as Edwards did, from a convenient and secure location, which is likely the drug dealer's residence. *Reddrick*, 90 F.3d at 1281; and *Lamon*, 930 F.2d at 1188.

The affidavit also details the type of gun possessed by Edwards, including details regarding the holster and the caliber. The affidavit further explains that Edwards did not have a concealed carry permit, and that Edwards was a felon for a 1981 Illinois armed robbery conviction. These facts establish the crime of a felon in possession of a firearm and an armed drug dealing.

Also importantly detailed in the affidavit was that Edwards' arrest occurred on August 29, 2016, approximately a half mile from Edwards' residence[1]. The following day

---

[1] Judge Witkowiak would have likely been familiar with the distance between Edwards' arrest and his residence, which was clear from the addresses. Judicial notice of distances is allowed.

6

on August 30, 2016, Officer Newport obtained judicial approval and executed a search warrant at Edwards' residence for guns and drugs. Therefore, the search warrant was executed in close proximity in time and place to Edwards' arrest, which is further evidence that the Edwards' residence was likely to have evidence of guns and drugs when the warrant was executed.

After detailing the evidence showing that Edwards was trafficking cocaine while armed and was a felon in possession of a firearm, Officer Newport's affidavit explains, among other things, that law enforcement verified the location of Edwards' residence. It is not necessary that each factual allegation put forth in an affidavit be independently documented. *Gates* at 231. Contrary to Edwards' assertion, Officer Newport's explanation of the location of Edwards' residence is not merely "conclusory." A conclusory statement would merely say, "Edwards resides at 3284 N. Sherman Boulevard, apartment #2."

Officer Newport supports the conclusion that Edwards' resides at 3284 N. Sherman Boulevard, apartment #2 through an explanation that Special Agent Tim Rorabeck went into the apartment complex at 3284 N. Sherman Boulevard and verified that Edwards resided in that apartment complex in apartment #2. From the affidavit, the issuing judge could reasonably infer that Special Agent Rorabeck informed Officer Newport that he went to 3284 N. Sherman Boulevard to conduct an investigation regarding Edwards' living arrangement, and that Special Agent Rorabeck could demonstrate as true to Officer Newport that Edwards resided at 3284 N. Sherman Boulevard, apartment #2.

7

The explanation in the affidavit was sufficient for a magistrate to determine that there was probable cause that Edwards resided at the location. Officer Newport could have included the facts that Special Agent Rorabeck observed and spoke to Edwards inside of apartment #2, and also verified with the property manager and through resident documents that Edwards lived in apartment #2. Not including this detail does not, however, vitiate the probable cause in the affidavit.

Therefore, the affidavit provides sufficient probable cause that Edwards resides at 3284 N. Sherman Boulevard, apartment #2, Milwaukee, WI and that there was probable cause that in that residence there was evidence of drug and gun possession.

D. THE *LEON* GOOD FAITH EXCEPTION IS APPLICABLE

The government agrees with Magistrate Judge Duffin's conclusion that even if the affidavit was deficient, the officers acted in good faith and suppression is not appropriate. In *United States v. Leon*, 104 S.Ct. 3405, 3421 (1984), the Supreme Court held that evidence seized pursuant to a subsequently invalidated search warrant need not be suppressed if the officers relied in good faith on the judge's decision to issue the warrant. *See also United States v. Miller*, 673 F.3d 688, 692-93 (7th Cir. 2012); *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008); *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008)). An officer's decision to obtain a search warrant is *prima facie* evidence of the officer's good faith. *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012).

Edwards can rebut the presumption of good faith only by showing that the issuing judge abandoned the detached and neutral judicial role, the officer was dishonest or

8

reckless in preparing the affidavit, or that the warrant was so lacking in probable cause as to render the officer's belief in its validity entirely unreasonable. *Id.* None of those circumstances presents itself here.

In this case, there is no accusation that Officer Newport was dishonest or reckless in providing his affidavit information. There is also no argument that Judge Witkowiak "abandoned the detached and neutral judicial role." Moreover, the officer followed the proper procedures and protocols by having his warrant reviewed by both a prosecutor and a judge prior to execution.

Because Edwards fails to make a substantial showing that the warrant was so lacking in probable cause as to render the officer's belief in it entirely unreasonable, the *Leon* good faith exception is available.

Furthermore, suppression would not serve the deterrent purpose of the exclusionary rule. As the Supreme Court explained in *Massachusetts v. Sheppard*, 104 S.Ct. 3424, 3428-29 (1984), the exclusionary rule is intended to punish mistakes made by law enforcement, not mistakes made by judges. In *Sheppard*, the agents used the incorrect form to obtain a search warrant for evidence of a murder in the defendant's house. The only available form was one used to search for controlled substances. The agents attempted to conform the warrant to search for evidence of the murder, but inadvertently missed several references to controlled substances. In upholding the validity of the warrant, the Supreme Court explained that the agents reasonably relied on the judge's representation that the warrant was valid, and that suppressing evidence because the

9

judge failed to make all the necessary clerical corrections does not serve the exclusionary rule's deterrent function. *Id.* Here, any argument that Edwards could make is that the mistake was made by the issuing judge, and thus, suppression is not the appropriate remedy.

## II.  CONCLUSION

In this case, the Milwaukee Police Department sought to search Edwards' residence for guns and drugs. The officers pursued this in the appropriate manner. Officer Newport drafted a search warrant and had it reviewed by a state prosecutor who approved the warrant. After the prosecutor approved the warrant, the officer took the warrant to a neutral circuit court judge who approved and signed the warrant. That search warrant was specific and supported by probable cause, and the search warrant was reviewed and signed by a neutral magistrate. Moreover, the officer relied in good faith on a search warrant that was authorized by a judge.

Accordingly, the United States of America respectfully requests that this Court deny Edwards' motion to suppress.

Respectfully submitted in Milwaukee, Wisconsin, this 17 day of April, 2017.

>                                GREGORY J. HAANSTAD
>                                United States Attorney
>
> By:    _____
>                                CHRISTOPHER LADWIG
>                                Assistant United States Attorney
>                                United States Attorney's Office
>                                Wisconsin Bar No. 1052024

U.S. Federal Building & Courthouse
517 E. Wisconsin Avenue, Room 530
Tel: 414-297-4103; Fax: 414-297-1738
Christopher.Ladwig@usdoj.gov

11